CLEVELAND BAR ASSOCIATION *v.* LEHOTSKY.

[Cite as *Cleveland Bar Assn. v. Lehotsky,*
105 Ohio St.3d 226, 2005-Ohio-1204.]

(No. 2004–1763—Submitted January 19, 2005—Decided April 6, 2005.)

_____

**Per Curiam.**

{¶ 1} Respondent, Marc A. Lehotsky, last known address in Lakewood, Ohio, Attorney Registration No. 0068814, was admitted to the practice of law in Ohio in 1997. On June 9, 2003, relator, Cleveland Bar Association, charged respondent with two counts of having violated the Code of Professional Responsibility. Attempts to serve respondent by certified mail and the Cuyahoga County Sheriff were unsuccessful, and the complaint was served on the Clerk of the Supreme Court pursuant to Gov.Bar R. V(11)(B). Respondent did not answer, and relator moved for default pursuant to Gov.Bar R. V(6)(F).

{¶ 2} A master commissioner appointed by the Board of Commissioners on Grievances and Discipline granted the motion, making findings of misconduct and a recommendation, all of which the board adopted.

{¶ 3} As to Count I, the board found that around November 10, 2001, Jeffrey and Laura Krause paid respondent $225 to draft their wills. A month later, not having heard from respondent, the Krauses called him to check on his progress. Respondent told the Krauses that he would have the wills completed shortly. From January through March 2002, the Krauses left several telephone messages for respondent. Respondent returned one of these calls, leaving word that he was dealing with some family problems and would complete their wills soon. Sometime after April 2002, the Krauses attempted to contact respondent again, only to discover that his telephone had been disconnected. Respondent never did prepare wills for the Krauses, nor did he return the retainer they had paid.

{¶ 4} With respect to Count I, the board found that respondent had violated DR 6–101(A)(3) (prohibiting the neglect of an entrusted legal matter), 7–101(A)(2) (requiring a lawyer to carry out a contract of professional employment), 9–102(B)(4) (requiring a lawyer to promptly pay a client funds the client is entitled to receive), and 1–102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation).

{¶ 5} As to Count II, the board found that respondent had failed to cooperate in relator's investigation of this misconduct, a violation of Gov.Bar R. V(4)(G). On November 8, 2002, relator sent a certified letter to respondent requesting a written response to a grievance filed by the Krauses. The letter was returned marked "unclaimed."

{¶ 6} On December 5, 2002, relator mailed another letter to respondent, again requesting a written response to the Krauses' grievance. Soon after, respondent replied by letter, acknowledging relator's investigation and advising that he intended to resign his license to practice law. In view of his anticipated resignation, respondent suggested that an investigation of the Krauses' grievance was unnecessary.

{¶ 7} In a letter dated December 18, 2002, relator supplied respondent with information regarding the resignation process and asked for a response to the Krause grievance. Relator advised respondent that the investigation would continue until this court accepted his resignation. Respondent apparently received this letter because it was not returned as refused, unclaimed, or otherwise undeliverable.

{¶ 8} On March 26, 2003, relator sent another investigative inquiry to respondent at the same address. He did not reply. On April 30, 2003, relator sent a letter by certified and regular mail, requesting yet again a response to the grievance and advising of the intention to file a formal complaint. The certified

letter was returned unclaimed, but the other letter was not. On July 30, 2004, after filing the formal complaint, relator sent duplicate letters by regular and certified mail warning respondent of an impending motion for default. Both letters were returned as unclaimed.

{¶ 9} In its letter of April 30, 2003, relator had referred respondent to the Ohio Lawyers Assistance Program ("OLAP") because of respondent's own expressions of concern for his well-being in his letter of December 2002. Several days later, Scott R. Mote, Executive Director of OLAP, sent a letter to respondent offering OLAP's assistance and services on the chance that respondent might be suffering from a chemical dependency or mental disorder. That letter, which was not returned, also produced no response.

## Sanction

{¶ 10} In recommending a sanction for his misconduct, the board considered the mitigating and aggravating factors of respondent's case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The board found that respondent had apologized for his misconduct in his letter of December 2002 and had never before been the subject of disciplinary proceedings. BCGD Proc.Reg. 10(B)(2)(a). The board noted that respondent had not updated his attorney registration for this biennium and had apparently stopped accepting new clients in anticipation of his resignation and was winding up the affairs of other clients. As aggravating factors, the board found that respondent had failed to cooperate in the disciplinary process and had not made restitution. BCGD Proc.Reg. 10(B)(1)(i). Respondent had also failed to pay a $150 sanction ordered on February 27, 2003, for his noncompliance with continuing legal education requirements.

{¶ 11} Consistent with the sanction recommended by relator and the master commissioner, the board recommended that respondent be suspended from the practice of law for one year.

{¶ 12} Upon review, we agree that respondent violated DR 6–101(A)(3), 7–101(A)(2), 9–102(B)(4), and 1–102(A)(4) and Gov.Bar R. V(4)(G) as found by the board. We also agree that a one-year suspension is appropriate for this single example of neglect and respondent's failure to cooperate. Accord *Cuyahoga Cty. Bar Assn. v. Muhlbach* (1999), 86 Ohio St.3d 547, 715 N.E.2d 1134 (isolated incident of misconduct, coupled with prior history of discipline, but also eventual cooperation in disciplinary process warranted attorney's one-year suspension from the practice of law). In addition to the board's sanction, we further accept relator's recommendation that respondent be ordered to pay restitution. See, e.g., *Columbus Bar Assn. v. Patterson* (1999), 86 Ohio St.3d 23, 711 N.E.2d 221.

{¶ 13} Respondent is therefore suspended from the practice of law in Ohio for one year. He is also ordered to repay the Krauses' $225 retainer, and, upon any request for reinstatement to the practice of law, he must show proof of this restitution. Costs are taxed to respondent.

Judgment accordingly.

RESNICK, PFEIFER, LUNDBERG STRATTON and O'DONNELL, JJ., concur.

MOYER, C.J., O'CONNOR and LANZINGER, JJ., dissent.

---

**MOYER, C.J., dissenting.**

{¶ 14} I respectfully dissent from the sanction imposed on respondent.

{¶ 15} The record before us demonstrates a pattern of irresponsibility on the part of respondent. He not only failed to perform the legal service he agreed to perform and failed to return his clients' telephone calls, but also failed to return the money he took from his clients more than three years ago as a retainer for that service. Moreover, he has largely ignored the resulting disciplinary investigation and proceedings against him.

{¶ 16} The majority imposes a one-year suspension. At the end of that suspension, respondent presumably can be reinstated to the practice of law simply upon proof of restitution of $225 to his clients and compliance with the registration obligation imposed by Gov.Bar R. VI and other applicable rules adopted for the government of the bar. There will be no review of his conduct during the year of suspension. We therefore will have no assurance that his dismissive attitude regarding the rules of this court and the need to cooperate with the disciplinary process will have changed. Why should a lawyer who shows utter disregard for our system of peer review be readmitted with no review of his conduct? We owe more than that to his prospective clients.

{¶ 17} I am not confident that the public will be protected from future misconduct should respondent in fact be reinstated at the end of one year. Although respondent says he intends to discontinue the practice of law, we have no assurance that he will. He has not submitted a resignation from the practice of law as authorized by Gov.Bar R. V(11). We should impose a sanction that provides greater assurance that respondent's unprofessional conduct will not be repeated.

{¶ 18} I would impose an indefinite suspension in order that we may determine upon his application for readmission, should one be presented, whether respondent intends to continue practicing law in Ohio and whether he appreciates all the responsibilities that accompany a license to practice law.

O'CONNOR and LANZINGER, JJ., concur in the foregoing dissenting opinion.

230

Denise Platfoot Lacey, for relator.